## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA

**JAMES ADAMS, on behalf of himself and other Oklahoma citizens similarly situated,**

**Plaintiffs,**

**EAGLE ROAD OIL LLC, CUMMINGS OIL COMPANY, and JOHN DOES 1-25,**

**Defendants.**

Case No. 16-CV-00757-CVE-TLW

Removed from Pawnee County, Oklahoma, No. CJ-2016-78

---

## DEFENDANT EAGLE ROAD OIL LLC'S MOTION TO DISMISS WITH BRIEF IN SUPPORT

---

Respectfully submitted,

Steven J. Adams, OBA No. 142
  Idaho Bar No. 7935
Ryan Pittman, OBA #31187
  North Dakota ID No. 07788
GableGotwals
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, Oklahoma 74103-4217
Telephone (918) 595-4800
Facsimile (918) 595-4990

ATTORNEYS FOR DEFENDANT EAGLE ROAD OIL LLC

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................... ii

INTRODUCTION .......................................................................................... 1

STATEMENT OF FACTS ............................................................................. 1

    Efforts to Understand and Manage Seismicity and
    Regulation of Oil and Gas Operations ........................................... 4

    The Oklahoma Corporation Commission's State-Wide Actions ............... 5

    Federal Actions to Evaluate Seismicity ...................................... 6

    Plaintiff's Complaint Fails to State Facts to Show Eagle Road is Liable... 7

ARGUMENT .................................................................................................. 7

I.    Plaintiff Cannot Demonstrate Article III Standing ...................................... 8

    i. Standing requires Plaintiff to plead and show specific
       facts to connect Defendants' conduct to Plaintiff's claims ............... 8

    ii. Plaintiff cannot show his injuries are "fairly traceable"
        to Defendants' disposal operations ...................................... 9

II.    The Amended Complaint Fails to Plead any Plausible Claim
    Against Eagle Road .......................................................................11

    i. Plaintiff failed to meet the *Twombley* and *Iqbal*
       pleading requirements .................................................................12

    ii. Naturally occurring conditions in oil and gas operations do not
        meet the causation requirements ...................................13

    iii. Plaintiff may not rely on market share liability ...............................14

CONCLUSION ..............................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Allen v. Wright,* 468 U.S. 737, 757 (1984) .................................................................12

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) .......................................................................12

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 547 (2007) ......................................12, 13

*Billy v. Tex., O. & E. R. Co.,* 1953 OK 280, 263 P.2d 187, 190 ................................14

*Case v. Fibreboard Corp.,* 1987 OK 79, 743 P.2d 1062, 1067 & n.6 ......................15

*Comer v. Murphy Oil USA, Inc.,* 839 F. Supp. 2d 849, 861 (S.D. Miss. 2012).........11

*Cooper Indus., Inc. v. Aviall Servs., Inc.,* 543 U.S. 157, 160-63 (2004) ..................  4

*DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 342 n. 3 (2006)...............................  9

*Evans v. Caldwell,* 167 OK 154, 429 P.2d 962..........................................................14

*Gwaltney of Smithfield, Ltd. V. Chesapeake Bay Foundation, Inc.*
    484 U.S. 49, 53-54 (1987) ...........................................................................  4

*Habecker v. Town of Estes Park, Colo.,* 518 F.3d 1217, 1225 (10th Cir. 2008) ........10

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559-60 (1992) ...................................  9

*Miller v. Wyeth Laboratories, Inc.*
    No. 94-6090, 1994 WL 708197 at *1 (10th Cir. Dec. 21, 1994)...................15

*Native Village of Kivalina v. ExxonMobil Corp.*
    696 F.3d 849, 867 (9th Cir. 2012) ...............................................................10-12

*Nova Health Systems v. Gandy,* 416 F.3d 1149, 1156 (10th Cir. 2005) .....................10, 11

*Maya v. Centex Corp.,* 658 F.3d 1060, 1070 (9th Cir. 2011) ......................................12

*Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*
    73 F.3d 546, 558 (5th Cir. 1996) ..................................................................10

*Simon v. E. Ky. Welfare Rights Org.,* 426 U.S. 26, 45-46 (1976) ..............................11

*Sprint Comm'n Co. , L.P. v. APCC Servs., Inc.,* 554 U.S. 269, 273-74 (2008)......... 9

## CASES  *(Continued)*

*Texas Indep. Producers and Royalty Owners Assoc. v. EPA*
    410 F.3d 964, 973-74 (7th Cir. 2005) .............................................................10

*Valley Forge Christian College v. Americans United for
    Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982) .................. 9

*Wood v. Eli Lilly & Co.*, 38 F.3d 510 (10th Cir. 1994)..............................................15


## STATUTES

52 O.S. § 287 ...................................................................................... 2

Fed.R.Civ.P. Rule 8 ...............................................................................12

Fed.R.Civ.P. Rule 12(B)(1) and (6)......................................................... 1

Okla. Admin Code 165:10-1-2 ................................................................ 5


## OTHER AUTHORITIES

*Early Oklahoma Oil*, Lambert and Tyson.................................................. 3

*Minimizing and Managing Potential Impacts of Injection-Induced
Seismicity from Class II Disposal Wells: Practical Approaches,*
http://www.epa.gov/r5water/uic/techdocs.htm ......................................... 6, 7

*OCC Earthquake Summary Response (Nov. 2016)*
http://www.occeweb.com/News/2016/11-23-16EARTHQUAKE%20ACTION%20SUMMARY.pdf............ 5

*Restatement (Second) of Torts* § 433B cmt. a (1965) ................................15

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

JAMES ADAMS, on behalf of himself
and other Oklahoma citizens similarly
situated,

Plaintiffs,

EAGLE ROAD OIL LLC, CUMMINGS
OIL COMPANY, and JOHN DOES 1-25,

Defendants.

Case No. 16-CV-00757-CVE-TLW
Removed from Pawnee County,
Oklahoma, No. CJ-2016-78

## DEFENDANT EAGLE ROAD OIL LLC'S MOTION TO DISMISS WITH BRIEF IN SUPPORT

Pursuant to Fed. R. Civ. P. 12(b)(1) and (6), Defendant Eagle Road Oil LLC ("Eagle Road") moves the Court to dismiss Plaintiff's Class Action Petition ("Complaint") for failure to state a claim upon which relief can be granted.

### INTRODUCTION

Plaintiff fails to plead the manner in which the named Plaintiff and putative class representative was purportedly injured by any salt water disposal activity conducted by Eagle Road, Cummings Oil, or any other John Doe defendant. Nowhere in the Complaint does Plaintiff state any specific damage to Plaintiff's property and no allegation is made that Plaintiff owns property in the putative "Class Area."

With respect to Eagle Road, Plaintiff only alleges it "owns and operates the wastewater disposal well at issue in this case." [Compl. ¶ 5]. Yet, Plaintiff fails to include any further detail relating to Eagle Road's "wastewater disposal well," including

injection rate, volume, depth, or legal location.[1] Plaintiff doesn't even identify the name of the well. The remaining allegations contained in the Complaint conclude "Oklahoma's earthquakes over the past five or so years have been caused by the oil and gas industry's disposal of fracking related waste." [Compl. ¶16]. By Plaintiff's own allegations, it is not Eagle Road's or Cummings Oil's specific salt water disposal operations that caused earthquakes.  Their activity is merely a part of the Oklahoma oil and gas industry's disposal operations, which, collectively over a period of several decades has, according to the Plaintiff, caused earthquakes.

The Complaint then attempts to impose liability on Defendants for their alleged unspecified contribution to "causing" earthquakes. Plaintiff claims Eagle Road and Cummings Oil are responsible for all earthquakes that occur in the Class Area, whether naturally occurring or "man-made". However, Plaintiff cannot and does not differentiate between "naturally occurring" and "man-made" earthquakes. [2]

Not only has Plaintiff failed to plead a plausible claim for relief, but more importantly, Plaintiff's claims fail on jurisdictional grounds. Plaintiff lacks standing

---

[1] A Disposal Well is "a well which injects, for purposes other than enhanced recovery, those fluids brought to the surface in connection with oil or natural gas production." Okla. Admin. Code 165:10-5-1(2). During oil and gas production operations, natural water is produced along with oil and/or gas. This water has high salinity, and is often referred to as "wastewater" or "produced water." The disposal of wastewater is regulated by the Oklahoma Corporation Commission. Operators must report to the OCC the formation in which it disposes water, the volume of water disposed per month and the wellhead pressure. The reports are publically available.

[2] "Man-made" earthquake is a non-scientific term, but was created by the Plaintiff in an attempt to create liability.

under Article III to raise his claims because he alleges no facts showing his injuries are "fairly traceable" to the Defendants' actions. Oil and gas was first produced in Pawnee County in 1904. Thus for over 112 years, oil and gas production operations have existed in Pawnee County.[3] Plaintiff's theory of earthquake liability, as set forth in the Complaint, forecloses proof of the very causal connection Article III requires. Plaintiff acknowledges earthquakes occurred in Oklahoma prior to oil and gas activity, and no one particular disposal well operator may be to blame for a specific earthquake. Plaintiff blames the entire oil and gas industry activity as the cause of the September 3, 2016 earthquake.

Because Plaintiff's own theory is that his injuries were caused by an undifferentiated inundation of salt water into the Arbuckle formation by innumerable sources, on top of natural causes and including hundreds, if not thousands, of independent third-parties not before the Court, Plaintiff cannot establish that his injuries are "fairly traceable" to Defendants' salt water disposal operations. Plaintiff also lacks standing because the causal chain he advances is far too attenuated to satisfy Article III standards. Plaintiff's theory begins with Defendants owning salt water disposal wells and ends with property damage following an earthquake; a causal chain requiring multiple, tenuous, intermediate leaps along the way. Article III demands more.

---

[3] Oil and gas operations began in Pawnee County in 1904 when a major oil field was discovered near Cleveland in Pawnee County. The Minnetonka Oil and Gas Company obtained leases along the south bank of the Arkansas River. Several oil bearing sands were struck before the main pool of oil was located which flowed two hundred barrels per day. Within a year of the first discovery, there were 220 oil and gas producers in the Pawnee County producing more than 10,000 barrels of oil daily. Franks, Lambert and Tyson, *Early Oklahoma Oil*.

STATEMENT OF FACTS

**Efforts to Understand and Manage Seismicity and Regulation of Oil and Gas Operations**

Oklahoma's Governor, Legislature, and numerous regulatory agencies, most prominently the Oklahoma Corporation Commission ("OCC"), have devoted increasing attention over the past decade to the complex technical and public policy issues associated with seismicity and oil and gas operations. These political departments of government have researched and evaluated, among other things, how salt water disposal operations could impact seismic activity, and how government regulation in this specific area could affect the environment, economy and thousands of Oklahoma jobs.

These extensive efforts reflect the fact that increased seismicity is entirely different from other environmental issues. Assessing the significance of particular, engineered, salt water injections involves a level of complexity that is far different from a single-point source of a pollutant discharged into a specific body of water, *see, e.g. Gwaltney of Smithfield, Ltd. V. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 53-54 (1987) (discussing the Clean Water Act), or remediation of a single piece of property damaged by environmentally hazardous substances, *see, e.g., Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 160-63 (2004) (discussing Comprehensive Environmental Response, Compensation and Liability Act (CERCLA)). [4]

---

[4] Plaintiff repeatedly mischaracterizes saltwater disposal operations as "pollution." Pollution is defined in Oklahoma as "the contamination of fresh water or soil, either surface or subsurface, by salt water, mineral brines, waste oil, oil, gas, and/or other deleterious substances produced from or obtained or used in connection with the drilling, development,

**The Oklahoma Corporation Commission's State-wide Actions.**

The OCC is involved in attempting to understand and reduce increased seismicity. OCC has taken numerous actions related to disposal wells in specific zones around the state based on seismic events, under its statutory authority to oversee Oklahoma oil and gas operations. https://earthquakes.ok.gov/what-we-are-doing/oklahoma-corporation-commission/. In 2013, the OCC implemented what it called a "traffic light" program for disposal well operators, as recommended by the National Academy of Sciences, which directs the OCC staff to review disposal well permits for proximity to geologic faults, seismicity in the area and other factors. All proposed disposal wells, regardless of location, now undergo a seismicity review. *See* OCC Media Advisory, March 25, 2015. In 2014, the OCC also adopted new rules regarding disposal well reporting and monitoring.

In 2015, recognizing seismicity is not an isolated event specific to one disposal well or one company's operations, the OCC switched from isolated, well-by-well action to large-scale plans covering hundreds of disposal wells over 15,000 square miles. *OCC Summary*. The OCC actions and directives underscore the expansive nature of the issue, and diminish any notion that a particular operator may be singled out as the sole contributor to increased seismicity.

---

producing, refining, transporting, or processing of oil or gas within the State of Oklahoma." Okla. Admin Code 165:10-1-2. Lawful oil and gas operations are not "pollution."

**Federal Action to Evaluate Seismicity.**

In responding to increased seismicity within its jurisdiction, the EPA has worked with the OCC and OGS in crafting policy and directives relating to induced seismicity. It commissioned its own studies on potential sources of increased seismic activity, and issued directives relating to disposal wells in Osage County, Oklahoma, where the BIA manages oil and gas operations.

In 2015 the Drinking Water Protection Division of the EPA requested the UIC National Technical Working Group to develop a report with practical management tools to assist federal and state UIC ("underground injection control") regulators to address potential injection induced seismicity. *Minimizing and Managing Potential Impacts of Injection-Induced Seismicity from Class II Disposal Wells: Practical Approaches,* http://www.epa.gov/r5water/uic/techdocs.htm. The purpose of the report was not to determine a link between seismicity and salt water disposal and injection, but if a link does exist, to provide the UIC Director practical approaches to minimize and manage injection-induced seismicity. *Id.* at p.4. Interestingly, the report noted that "[d]isposal wells are just one of a number of historic causes of human activity-induced earthquakes. Other causes may include construction and management of dams and water reservoirs, erection of skyscrapers, mining activities, oil and gas production, geothermal energy production and geologic carbon sequestration." *Id.* at p. 1. The report also identifies the very complex engineering, reservoir, geophysical, and hydrologic considerations in making the nearly impossible determination of whether disposal and salt water injection in general may increase seismicity. *Id.* at p. 16.

**Plaintiff's Complaint Fails to State Facts to Show Eagle Road is Liable**

The Complaint does not state facts to show a direct causal connection between Eagle Road's activities and the Plaintiff's unspecified damages. It merely states Defendants Eagle Road and Cummings Oil "own[] and operate[] the wastewater disposal well[s] at issue in this [case/action]." [Compl. ¶¶ 5 and 6]. The Complaint then alleges "Defendants", including Eagle Road, Cummings Oil and "other Oklahoma oil and gas companies", "contributed to the earthquakes and resulting damages to Plaintiff and the Class members." *Id.* ¶ 7.

The Complaint does not state what property was damaged, other than one general, exaggerated statement that "waste-induced earthquakes have toppled historic towers, caused parts of houses to fall and injure people, cracked basements, and shattered nerves, as people fear there could be worse to come." [Compl. ¶20]. However, no mention was made of any damage to property owned by Plaintiff. Nor does the Complaint make any factual statement regarding Eagle Road's or Cummings' operations, or how those operations may be linked to the specific earthquake that occurred on September 3, 2016.

ARGUMENT

I.     **Plaintiff Cannot Demonstrate Article III Standing**

Plaintiff lacks standing under the requirements of Article III to bring these claims against Defendants because Plaintiff cannot show the alleged injuries are "fairly traceable" to Defendants' challenged disposal operations. For example, the Complaint does not state which disposal well(s) caused the increased seismicity which in turn allegedly caused the earthquake which caused him damage. Nor does the Complaint

allege the stratigraphic depth of the earthquake's epicenter[5] or the depth, volume, or

pressure of the wells which allegedly caused the increased seismicity.

To show he has standing, Plaintiff must answer these questions:

- How can Plaintiff's alleged injury be traced to any specific Defendants' salt water disposal operations?

- Have Defendants' operations actually caused an impact to Plaintiff or have they been offset by other factors, whether man-made or naturally occurring?

The Complaint is devoid of all well-pleaded facts necessary to answer these

questions and to connect Plaintiff's alleged damage to Defendants' specific disposal

operations. Because Plaintiff cannot satisfy the causation element of Article III standing,

the Complaint must be dismissed.

### i.     Standing requires Plaintiff to plead and show specific facts to connect Defendants' conduct to Plaintiff's claims.

Article III standing is a threshold requirement for federal court jurisdiction. *Lujan*

*v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). Under Article III of the Constitution,

federal judicial power extends only to "Cases" and "Controversies." U.S. Const., art. III,

§ 2, cl. 1.

[I]n order to have Article III standing, a plaintiff must adequately establish:
(1) *an injury in fact* (i.e., a concrete and particularized invasion of a legally
protected interest); (2) *causation* (*i.e.*, a fairly traceable connection between

---

[5] Importantly, the epicenter of the September 3, 2016, Pawnee earthquake originated at
roughly 18,000 feet below the surface.
http://earthquake.usgs.gov/earthquakes/eventpage/us10006jxs#scientific. The Arbuckle
formation, which is the salt water disposal formation at issue, is located at about 4,000
feet deep (below the surface) and is approximately 1,000' thick. Below the Arbuckle
formation, the earth's sub-surface is solid granite. Plaintiff avoids pleading these facts
because doing so would destroy any hope of connecting salt water disposal activity at
4,000 to 5,000 feet to the earthquake epicenter at 18,000.

the alleged injury in fact and the alleged conduct of the defendant); and (3) *redressability* (i.e., it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit).

*Sprint Comm'n Co. , L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273-74 (2008) (citing *Lujan*, 504 U.S. at 560-561) (emphasis added). Plaintiff bears the burden of establishing the elements of Article III standing, including fair traceability. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n. 3 (2006). Plaintiff cannot satisfy this burden by simply presenting labels or conclusions or generalized factual allegations. *See, e.g., Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982) in which the court stated:

> The requirements of Art. III standing are not satisfied merely because a party requests a court of the United States to declare its legal rights, and has couched that request for forms of relief historically associated with courts of law in terms that have a familiar ring to those trained in the legal process.

ii.     **Plaintiff cannot show his injuries are "fairly traceable" to Defendants' disposal operations.**

Plaintiff cannot satisfy the causation requirement of standing. Plaintiff pleads only that Defendants operations "contributed" to the earthquakes which allegedly caused damage to Plaintiff's property. [Compl. ¶¶5-7]. As discussed below, Oklahoma has rejected this "market share liability" theory. To show causation Plaintiff must show his injury is "fairly traceable to the challenged action of the defendant, *and not the result of the independent action of some third party not before the court.*" *Lujan*, 504 U.S. at 560 (emphasis added). Article III's causation requirement is less stringent than proximate cause, "but nevertheless, it does at least require proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact." *Nova Health Systs. V. Gandy*, 416 F.3d 1149, 1156

(10th Cir. 2005); *see also Habecker v. Town of Estes Park, Colo.*, 518 F.3d 1217, 1225 (10th Cir. 2008).

While Plaintiff need not establish with "scientific certainty" a causal nexus between his harm and Defendants' disposal of wastewater, Plaintiff's standing to bring suit is "dependent on his ability to plead and prove the defendant's 'polluting source as the seed of his injury, and [that] the owner of the polluting source has supplied no alternative culprit. . . . ." *Native Village of Kivalina*, 663 F. Supp. 2d at 879 (quoting *Texas Indep. Producers and Royalty Owners Assoc. v. EPA*, 410 F.3d 964, 973-74 (7th Cir. 2005)).   It is impossible for Plaintiff to allege, much less prove, that any particular defendant was the "seed" or the point-source of his injury. *See Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 558 (5th Cir. 1996) ("Given the number of entities discharging chemicals into Galveston Bay, it would be virtually impossible for any of Sierra Club's members to trace his injuries to Cedar Point's discharge in particular.").

Taking the allegations in the Complaint as true, there is no way to show what salt water – disposed by whom and at what depth and in what volume and at what time in the last several decades around Oklahoma – "caused" Plaintiff's alleged earthquake-related injuries. *See, Native Village of Kivalina*, 663 F. Supp. 2d at 880 (Plaintiff's pleading makes clear "there is no realistic possibility of tracing any particular alleged [earthquake] to any particular [disposal operations] by any specific person, entity, group at any particular point in time."). Plaintiffs are merely speculating who did what and when it was done. *See Nova Health Sys.*, 416 F.3d at 1157 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 45-46 (1976) ("The plaintiff's burden of demonstrating causation is not

satisfied when '[s]peculative inferences are necessary to connect [its] injury to the challenged actions.'").

At best, Plaintiff may argue that the types of operations conducted by Defendants, when combined with similar operations of others throughout the oil and gas industry, as well as innumerable other man-made and naturally-occurring sources of seismicity encompassing the "Class Area", may have contributed to increased seismic activity, which in turn caused natural faults to slip, which in turn caused the ground to shake, which in turn damaged Plaintiff's property. *See Comer v. Murphy Oil USA, Inc.*, 839 F. Supp. 2d 849, 861 (S.D. Miss. 2012) (holding plaintiffs could not allege defendant's particular emissions led to their property damage).

Plaintiff's claims of conduct, cause and damage are simply too attenuated to survive the standing requirements of Article III. *Allen v. Wright*, 468 U.S. 737, 757 (1984) (An injury is not "fairly traceable" to the defendant's conduct if the causal chain is "too attenuated."); *See, Native Village of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 867 (9th Cir. 2012) (J. Pro, concurring) (quoting *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) ("But where the causal chain 'involves numerous third parties whose independent decisions collectively have a significant effect on plaintiffs' injuries, . . . the causal chain [is] too weak to support standing at the pleading stage.").

## II. The Amended Complaint Fails to Plead any Plausible Claim for Relief Against Eagle Road

Although Eagle Road believes the issue of standing is dispositive of Plaintiff's claims, Plaintiff also failed to plead a claim for which this Court may grant relief.

i.     **Plaintiff failed to meet the *Twombley* and *Iqbal* pleading requirements.**

Under Rule 12(b)(6), a motion to dismiss should be granted if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). The Complaint must be dismissed if Plaintiff cannot state sufficient facts to "nudge their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 547.

As a consequence of both *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), it is clear that the Fed.R.Civ.P. Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  In determining whether the complaint states a "plausible" claim for relief, allegations of fact are what matter – "labels and conclusions" are meaningless and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *accord Iqbal*, 556 U.S. at 678 (a complaint which merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice under Rule 8).

Plaintiff's did not plead facts sufficient to nudge their claim across the line from "conceivable" to "plausible." Plaintiffs Complaint is replete with general conclusory accusations based on media hysteria, but lacks any science-based facts establishing a link between earthquakes and disposal operations in general, much less a link between this specific earthquake and Eagle Road's specific operations.

### ii.    Naturally occurring conditions in oil and gas operations do not meet the causation requirements.

According to Plaintiff's Complaint, the cause of "man-made" earthquakes, and thus his injuries, is not Eagle Road's particular disposal activity, but the disposal of salt water fluids by the entire oil and gas industry. [Compl. ¶16]. No legal principal allows Plaintiff to hold a handful of defendants, plucked from among the many other potential contributors to "man-made" earthquakes, liable in tort for all property damage allegedly caused by decades of oil and gas production and water disposal activities.

Oklahoma law requires Plaintiff to allege Eagle Road's conduct was not just capable of causing injury, but that its conduct did in fact cause Plaintiff's alleged injuries. Plaintiff obviously cannot allege that earthquakes would never happen but for any one of Defendants' disposal operations, nor does he allege that earthquakes would not have happened but for Eagle Road's disposal activities. Rather, Plaintiff merely repeats in a conclusory fashion and without any technical, factual support, that Defendants' (the oil and gas industry) disposal activity can cause earthquakes, including the Pawnee earthquake and all others thereafter.

Noticeably absent from these conclusory allegations are any science-based facts. Plaintiff fails to state the name of the disposal wells at issue, how many wells, the location, depth, injection rate and pressure of each well, or how any of these factors may "induce" earthquakes. But even if Plaintiff could state such facts, his Complaint would still be deficient because mere conditions do not constitute causation.

The Oklahoma Supreme Court has explained that "if the negligence complained of merely furnishes a condition by which the injury was possible and a subsequent independent act caused the injury, the existence of such condition is not the proximate cause of the injury." *Billy v. Tex., O. & E. R. Co.*, 1953 OK 280, 263 P.2d 187, 190; *see also, Evans v. Caldwell*, 167 OK 154, 429 P.2d 962. Disposal of wastewater into a subsurface formation is, at best, a condition which may increase the chance an earthquake will occur. It does not "cause" earthquakes. Rather, earthquakes are naturally occurring due to natural faulting in subsurface formations. Earthquakes occurred prior to the advent of underground disposal and injection and they will continue with or without salt water disposal or injection activity. Plaintiff cannot plausibly state that *Eagle Road's specific disposal* caused *this specific earthquake*. More importantly, Plaintiff *did not* state such facts in his Complaint.

### iii.   Plaintiff may not rely on market share liability.

Given the absence of allegations of causation with respect to individual Defendants, Plaintiffs apparently intends to rely upon an unspecified approach to causation.   However, the Oklahoma Supreme Court has expressly rejected forms of collective liability, such as market share liability, in actions in which plaintiffs could not identify the products alleged to cause the injuries at issue.  *See, e.g., Case v. Fibreboard Corp.*, 1987 OK 79, 743 P.2d 1062, 1067 & n.6.  Because Oklahoma  rejected market share liability, and because other theories, such as "alternative liability," obligate a plaintiff to show "that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the harm…[a] mere possibility of such causation is not enough; .

. ." *Restatement (Second) of Torts* § 433B cmt. a (1965).  Plaintiff is required to plead a plausible allegation of causation that ties each named Defendant to the Plaintiffs' alleged injuries.

Allegations that assert damages to "the Class" are not sufficient to state a claim by this Plaintiff.  The Complaint contains no allegations that specific Eagle Road conduct caused injuries to the named Plaintiff thus he stated no plausible claim against Eagle Road.  *See, e.g., Miller v. Wyeth Laboratories, Inc.*, No. 94-6090, 1994 WL 708197 at *1 (10th Cir. Dec. 21, 1994) (applying Oklahoma law) (affirming the district court's order dismissing a Complaint—that purported to rely upon "collective liability theories of alternate liability, market share liability, and enterprise or industry-wide liability" for failure to state a claim); *Wood v. Eli Lilly & Co.*, 38 F.3d 510 (10th Cir. 1994) (applying Oklahoma law) ("The law in Oklahoma requires the plaintiff to prove cause as an essential element of a negligence action. We do not believe the Oklahoma courts would allow the abrogation of this element under the facts of this case. We therefore conclude Oklahoma would apply neither the alternative liability doctrine nor the market share theory to this case.").

## CONCLUSION

Plaintiff does not have standing to bring the claims asserted in the Complaint because Plaintiff's damages are not fairly traceable to Defendants' salt water disposal operations. The Complaint fails state a plausible claim for relief. As such, Plaintiff's Complaint should be dismissed.

Dated this 4th day of January, 2017.

Respectfully submitted,

/s/ *Steven J. Adams*

Steven J. Adams, OBA No. 142
   Idaho Bar No. 7935
Ryan Pittman, OBA #31187
   North Dakota ID No. 07788
GABLEGOTWALS
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, Oklahoma 74103-4217
Telephone (918) 595-4800
Facsimile (918) 595-4990

ATTORNEYS FOR DEFENDANT EAGLE ROAD OIL LLC

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of January, 2017, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of the Electronic Filing to the following ECF registrants:

Kenneth H. Blakley, ken.blakley@mcafeetaft.com

Michael F. Smith, michael.smith@mcafeetaft.com

I also transmitted the attached document by US Mail, postage prepaid, and by email to the following:

Billy Joe Ellington
613 Illinois
P O Box 491
Pawnee, OK  74058
bjelaw33@gmail.com

Robin I. Greenwald
Curt Marshall
Weitz & Luxenberg
700 Broadway
New York, NY  10003
rgreenwald@weitzlux.com
cmarshall@weitzlux.com

Scott E. Poynter
Poynter Law Group
400 W. Capitol Avenue, Ste. 2910
Little Rock, AR  72201
scott@poynterlawgroup.com

Nate Steel
Alex Gray
Jeremy Hutchinson
Steel Wright Gray & Hutchinson PLLC
400 W. Capitol Avenue, Ste. 2910
Little Rock, AR  72201
nate@swcfirm.com
alex@swcfirm.com
jeremy@swcfirm.com

*/s/ Steven J. Adams* _____